**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LEVI STRAUSS & CO., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 15-11062 |
| | ) | |
| v. | ) | |
| | ) | |
| THE PARTNERSHIPS and | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE "A," | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT**

Plaintiff Levi Strauss & Co. ("LS&Co.") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at

least the fully interactive, commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of LS&Co.'s trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of LS&Co.'s federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused LS&Co. substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by LS&Co. to combat online counterfeiters who trade upon LS&Co.'s reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products, including jeans, jean jackets, and other apparel items, bearing counterfeit versions of LS&Co.'s federally registered trademarks (the "Counterfeit Levi's Products"). The Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling genuine LEVI'S® brand products, while actually selling Counterfeit Levi's Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and

2

the full scope and interworking of their massive counterfeiting operation. LS&Co. is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Levi's Products over the Internet. LS&Co. has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4.     Plaintiff LS&Co. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at Levi's Plaza, 1155 Battery Street, San Francisco, California 94111.

5.     Operating since the 1850s, LS&Co. is one of the oldest and best known apparel companies in the world. It manufactures, markets and sells a variety of apparel, including its traditional LEVI'S® brand products, all of which are marked with a set of trademarks that are famous around the world. LEVI'S® brand products have become enormously popular and even iconic, driven by LS&Co.'s arduous quality standards and innovative design. Among the purchasing public, LEVI'S® brand products are instantly recognizable as such. In the United States and around the world, the LEVI'S® brand has come to symbolize high quality, and LEVI'S® brand products are among the most recognizable apparel products in the world.

6.     LEVI'S® brand products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois, the official levi.com website which was launched in 1994, and LEVI'S® Stores, including locations at 600 N. Michigan Avenue and 1552 N. Milwaukee Avenue in Chicago, Illinois.

7.     LS&Co. incorporates a variety of distinctive marks in the design of its various LEVI'S® brand products.   Among its marks, LS&Co. owns the famous Arcuate Stitching Design Trademark (the "Arcuate trademark"), which consists of a distinctive pocket stitching design that is the oldest known apparel trademark in the United States still in continuous use. LS&Co. has used the Arcuate trademark continuously since 1873 in interstate commerce on clothing products.   LS&Co. first used the Arcuate trademark on jeans and later used it on other products, as well.

8.     The Arcuate trademark is valid and protectable, and exclusively owned by LS&Co.   The Arcuate trademark is famous and is recognized around the world and throughout the United States by consumers as signifying authentic, high quality LEVI'S® brand products.

9.     LS&Co. also owns the famous Tab Device Trademark (the "Tab trademark"), which consists of a textile marker or other material sewn into one of the regular structural seams of the garment.   LS&Co. uses the Tab trademark on LEVI'S® brand jeans and a variety of other clothing products.   LS&Co. began to display the Tab trademark on the rear pocket of its pants in 1936 when its National Sales Manager, Leo Christopher Lucier, proposed placing a folded cloth ribbon in the structural seams of the rear pocket.   The purpose of this "tab" was to provide "sight identification" of LS&Co.'s products.   Given the distinctiveness of the Tab trademark, Mr. Lucier asserted that "no other maker of overalls can have any other purpose in putting a colored tab on an outside patch pocket, unless for the express and sole purpose of copying our mark, and confusing the customer."

10.     The Tab trademark is valid and protectable, and exclusively owned by LS&Co. The Tab trademark is famous and recognized around the world and throughout the United States by consumers as signifying authentic, high quality LEVI'S® brand products.

4

11.    As a result of its long-standing use, LS&Co. owns common law trademark rights in its trademarks.  LS&Co. has also registered its trademarks, including the Arcuate and Tab trademarks, with the United States Patent and Trademark Office.  LEVI'S® brand products typically include at least one of LS&Co.'s registered trademarks.  Often several LS&Co. marks are displayed on a single LEVI'S® brand product.  LS&Co. uses its trademarks in connection with the marketing of its LEVI'S® brand products, including the following marks which are collectively referred to as the "LEVI'S Trademarks."

| REGISTRATION NUMBER | TRADEMARK | REGISTRATION DATE | GOODS AND SERVICES |
|---|---|---|---|
| 223,725 |  | February 8, 1927 | For: Overalls in class 025 |
| 250,265 |  | December 4, 1928 | For: Jeans in class 025 |
| 356,701 |  | May 10, 1938 | For: pants of the patch-pocket type worn by men, women and children in class 025 |
| 404,248 |  | November 16, 1943 | For: Waistband type overalls in class 025 |

| 516,561 |  | October 18, 1949 | For: Men's, women's and children's jeans and jackets in class 025 |
| 523,665 |  | April 11, 1950 | For: Men's, women's, boys', and girls' trousers in class 025 |
| 577,490 |  | July 21, 1953 | For: Jeans in class 025 |
| 581,610 | **LEVI'S** | October 27, 1953 | For: Men's, women's and children's overalls, jackets, outer shirts, slacks, and pants; skirts in classes 010, 025, 026 |
| 720,376 |  | August 22, 1961 | For: Pants in classes 010, 025, 026 |
| 774,625 |  | August 4, 1964 | For: Garments, Particularly Trousers in class 025 |
| 775,412 |  | August 18, 1964 | For: Garments, Particularly Trousers in class 025 |
| 849,437 |  | May 21, 1968 | For: Trousers, jackets, shorts, shirts, skirts in classes 010, 025, 026 |

| | | | |
|---|---|---|---|
| 928,351 |  | February 1, 1972 | For: Men's, women's and children's pants, jackets in classes 010, 025, 026 |
| 1,030,033 |  | January 13, 1976 | For: Wallets in class 018 |
| 1,044,246 |  | July 20, 1976 | For: Shoes in class 025 |
| 1,095,986 |  | July 11, 1978 | For: Luggage-namely, back packs, shoulder bags, and purses in class 018<br><br>For: Caps in class 025 |
| 1,124,018 | LEVI'S | August 14, 1979 | For: Purses, denim shopping bags, back packs, duffle bags, briefcase portfolios, key cases and wallets in class 018<br><br>For: Belts, hats, caps, visors, and shoes in class 025 |
| 1,130,486 | LEVI'S | February 5, 1980 | For: Socks in class 025 |
| 1,135,196 |  | May 13, 1980 | For: Garments-namely, pants in class 025 |
| 1,139,254 |  | September 2, 1980 | For: Pants, jackets, skirts, and shorts in class 025 |
| 1,140,011 | LEVI'S | September 30, 1980 | For: Garments, namely, pants, shirts, and shorts in class 025 |

7

| | | | |
|---|---|---|---|
| 1,140,853 |  | October 28, 1980 | For: Garments-Namely, Pants, Jackets, Overalls and Shoes in class 025 |
| 1,157,306 |  | June 9, 1981 | For: Key Cases, Wallets, and Luggage in class 018 |
| 1,157,769 |  | June 16, 1981 | For: Trousers in class 025 |
| 1,313,554 | 505 | January 8, 1985 | For: Pants in class 025 |
| 1,319,462 | 517 | February 12, 1985 | For: Pants in class 025 |
| 1,381,510 |  | February 4, 1986 | For: Pants in class 025 |
| 1,552,985 | 501 | August 22, 1989 | For: Jeans in class 025 |
| 2,320,789 |  | February 22, 2000 | For: Clothing, namely, men's, women's and children's pants, slacks, trousers, jeans, shorts, overalls, shirts, t-shirts, vests, skirts, jackets, coats, sweaters, sweatshirts, hats and shoes in class 025 |
| 2,503,976 | 569 | November 6, 2001 | For: jeans and pants in class 025 |
| 2,726,253 |  | June 17, 2003 | For: Clothing, namely, shirts in class 025 |

| 2,791,156 |  | December 9, 2003 | For: Pants, jeans, shorts, skirts and jackets in class 025 |
| 2,794,649 |  | December 16, 2003 | For: Pants, jeans, shorts, shirts, t-shirts, blouses, skirts, and jackets in class 025 |
| 3,938,013 | 201 | March 29, 2011 | For: Jeans in class 025 |
| 3,997,020 |  | July 19, 2011 | For: Jeans in class 025 |
| 4,053,137 | 550 | November 8, 2011 | For: Jeans; pants; shorts in class 025 |
| 4,576,208 |  | July 29, 2014 | For: Jackets; jeans; pants; t-shirts; vests in class 025 |
| 4,660,979 | LEVI'S | December 23, 2014 | For: Underwear in class 025 |

12.     The above registrations for the LEVI'S Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The LEVI'S Trademarks have been used exclusively and continuously by LS&Co., some since at least as early as 1873, and have never been abandoned.  The registrations for the LEVI'S Trademarks constitute *prima facie* evidence of their validity and of LS&Co.'s exclusive right to use the LEVI'S Trademarks pursuant to 15 U.S.C. § 1057(b).  Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the LEVI'S Trademarks included in the above table.

13.     The LEVI'S Trademarks are exclusive to LS&Co. and are displayed extensively on LEVI'S® brand products and in LS&Co.'s marketing and promotional materials.  LEVI'S®

9

brand products have long been among the most popular jeans and apparel in the world and have been extensively promoted and advertised at great expense. In fact, LS&Co. has expended millions of dollars annually in advertising, promoting and marketing featuring the LEVI'S Trademarks. LEVI'S® brand products have also been the subject of extensive unsolicited publicity resulting from their high-quality, timeless designs and worldwide renown. Because of these and other factors, the LEVI'S® brand and the LEVI'S Trademarks have become famous throughout the United States.

14.     The LEVI'S Trademarks are distinctive when applied to the LEVI'S® brand products, signifying to the purchaser that the products come from LS&Co. and are manufactured to LS&Co.'s quality standards. Whether LS&Co. manufactures the products itself or licenses others to do so, LS&Co. has ensured that products bearing its LEVI'S Trademarks are manufactured to the highest quality standards. The LEVI'S Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the LEVI'S Trademarks is of incalculable and inestimable value to LS&Co.

15.     Since at least as early as 1994, LS&Co. has operated a website where it promotes and sells LEVI'S® brand products at levi.com. Sales of LEVI'S® brand products via the levi.com website represent a significant portion of LS&Co.'s business. The levi.com website features proprietary content, images and designs exclusive to LS&Co.

16.     LS&Co.'s innovative marketing and product designs have enabled LS&Co. to achieve widespread recognition and fame and have made the LEVI'S Trademarks some of the most well-known marks in the apparel industry. The widespread fame, outstanding reputation,

and significant goodwill associated with the LEVI'S® brand have made the LEVI'S Trademarks valuable assets of LS&Co.

17.     LS&Co. has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the LEVI'S Trademarks.  As a result, products bearing the LEVI'S Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from LS&Co.  LS&Co. is a multi-million dollar operation, and LEVI'S® brand products have become among the most popular of their kind in the world.

**The Defendants**

18.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions.  Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online marketplaces operating under the Defendant Internet Stores.  Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell Counterfeit Levi's Products to consumers within the United States, including the State of Illinois.

19.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions of the LEVI'S Trademarks in the same transaction, occurrence, or series of transactions or occurrences.  Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for LS&Co. to learn Defendants' true identities and the exact interworking of their

11

massive counterfeit network. In the event that Defendants provide additional credible information regarding their identities, LS&Co. will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

20. The success of the LEVI'S® brand has resulted in its significant counterfeiting. Consequently, LS&Co. has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, LS&Co. has identified hundreds of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer and Aliexpress, including the Defendant Internet Stores, which were offering for sale, selling, and importing Counterfeit Levi's Products to consumers in this Judicial District and throughout the United States. Despite LS&Co.'s enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores, which generate massive profits selling Counterfeit Levi's Products. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

21. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine LEVI'S® brand products. Many of the Defendant Internet Stores look

sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. The Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. LS&Co. has not licensed or authorized Defendants to use any of the LEVI'S Trademarks, and none of the Defendants are authorized retailers of LEVI'S® brand products.

22.    Defendants also deceive unknowing consumers by using the LEVI'S Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for LEVI'S® brand products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for LEVI'S® brand products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, LS&Co. also seeks to disable Defendant Domain Names owned by Defendants that are the means by which the Defendants could continue to sell Counterfeit Levi's Products.

23.    Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to

13

include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

24.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit Levi's Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Levi's Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from LS&Co.'s official levi.com website.

25.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often

register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

26.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of LS&Co.'s enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

27.     Defendants, without any authorization or license from LS&Co., have knowingly and willfully used and continue to use the LEVI'S Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Levi's Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Levi's Products into the United States, including Illinois.

28.     Defendants' use of the LEVI'S Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Levi's Products, including the sale of Counterfeit Levi's Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming LS&Co.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

29.     LS&Co. re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 28.

30.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered LEVI'S Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The LEVI'S Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from LEVI'S® brand products sold or marketed under the LEVI'S Trademarks.

31.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing counterfeit reproductions of the LEVI'S Trademarks without LS&Co.'s permission.

32.     LS&Co. is the exclusive owner of the LEVI'S Trademarks. LS&Co.'s United States Registrations for the LEVI'S Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of LS&Co.'s rights in the LEVI'S Trademarks, and are willfully infringing and intentionally using counterfeits of the LEVI'S Trademarks. Defendants' willful, intentional and unauthorized use of the LEVI'S Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Levi's Products among the general public.

33.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

34.     LS&Co. has no adequate remedy at law, and if Defendants' actions are not enjoined, LS&Co. will continue to suffer irreparable harm to its reputation and the goodwill of its well-known LEVI'S Trademarks.

35.     The injuries and damages sustained by LS&Co. have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Levi's Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

36.     LS&Co. hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35.

37.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Levi's Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with LS&Co. or the origin, sponsorship, or approval of Defendants' Counterfeit Levi's Products by LS&Co.  By using the LEVI'S Trademarks on the Counterfeit Levi's Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Levi's Products.

38.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Levi's Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

39.     LS&Co. has no adequate remedy at law and, if Defendants' actions are not enjoined, LS&Co. will continue to suffer irreparable harm to its reputation and the goodwill of its LEVI'S® brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

40.     LS&Co. hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 39.

41.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Levi's Products as those of LS&Co., causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with LEVI'S® brand products, representing that their products have LS&Co.'s approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

42.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

43.     LS&Co. has no adequate remedy at law, and Defendants' conduct has caused LS&Co. to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, LS&Co. will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, LS&Co. prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the LEVI'S Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine LEVI'S® brand product or is not authorized by LS&Co. to be sold in connection with the LEVI'S Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine LEVI'S® brand product or any other product produced by LS&Co., that is not LS&Co.'s or not produced under the authorization, control, or supervision of LS&Co. and approved by LS&Co. for sale under the LEVI'S Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Levi's Products are those sold under the authorization, control or supervision of LS&Co., or are sponsored by, approved by, or otherwise connected with LS&Co.;

   d. further infringing the LEVI'S Trademarks and damaging LS&Co.'s goodwill;

   e. otherwise competing unfairly with LS&Co. in any manner;

   f. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for LS&Co., nor authorized by LS&Co. to be sold or offered for sale, and which bear any LS&Co. trademark, including the

LEVI'S Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Levi's Products; and

h. operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the LEVI'S Trademarks or any reproductions, counterfeit copies or colorable imitations thereof that is not a genuine LEVI'S® brand product or not authorized by LS&Co. to be sold in connection with the LEVI'S Trademarks; and

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon LS&Co. a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through h, above;

3) Entry of an Order that, at LS&Co.'s choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to LS&Co., and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of LS&Co.'s selection, and that the domain name registrars take any steps necessary to transfer the Defendant Domain Names to a registrar of LS&Co.'s selection; or that the same domain

20

name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

4) Entry of an Order that, upon LS&Co.'s request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as iOffer and domain name registrars, shall:

    a. disable and cease providing services for any accounts through which Defendants, currently or in the future, engage in the sale of goods using the LEVI'S Trademarks, including, but not limited to, any accounts associated with the Defendants listed on Schedule A; and

    b. disable any account linked to Defendants, linked to any e-mail addresses used by Defendants, or linked to any Defendant Domain Names;

5) That Defendants account for and pay to LS&Co. all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the LEVI'S Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6) In the alternative, that LS&Co. be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the LEVI'S Trademarks;

7) That LS&Co. be awarded its reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.

Dated this 9th day of December 2015.     Respectfully submitted,

/s/ Justin R. Gaudio_____
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net
jbloodgood@gbclaw.net

*Counsel for Plaintiff Levi Strauss & Co.*